United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MERTON GEORGE YAHN,                           No. C-13-0855 EMC (pr)

            Petitioner,

      v.                                      **ORDER DENYING PETITION FOR
                                              WRIT OF HABEAS CORPUS**

AUDREY KING,
Acting Executive Director,

            Respondent.
_____/

## I.    INTRODUCTION

Merton George Yahn filed this *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge the proceedings in Lake County Superior Court to civilly commit him under California's Sexually Violent Predator Act ("SVPA"), *see* Cal. Welf. & Inst. Code § 6600 *et seq.* The petition has been fully briefed and is ready for decision. For the reasons discussed below, the petition will be denied on the merits.

## II.   BACKGROUND

Mr. Yahn was first civilly committed pursuant to the SVPA in 2003; his civil commitment was extended several times, and he now is in custody on an indeterminate term of commitment. In this action, he challenges the most recent civil commitment decision that was finally made on December 12, 2012 pursuant to a petition first filed on September 5, 2007.

The Court will first describe the relevant part of the SVPA regarding the duration (or term) of commitment, and then will describe the complicated procedural history of this particular case –

**United States District Court**
For the Northern District of California

1   all with an eye toward resolving Mr. Yahn's habeas claims that are based on the five-year delay

2   between the filing of the petition and the holding of the trial thereon.

3   A.      Commitment Terms Under The SVPA Now And Before A 2006 Amendment

4           California's SVPA is codified at California Welfare & Institutions Code sections 6600-

5   6609.3, and was first enacted in 1995.  Until 2006, a person determined to be a sexually violent

6   predator ("SVP") was committed to the custody of the California Department of Mental Health for a

7   period of two years.  *See* former Cal. Penal Code § 6604.  Once that period expired, the State had to

8   petition to extend the commitment for another two years, or the petitioner could be released.

9           Section 6604 was amended in late 2006 to change the commitment period from two years to

10  an indeterminate commitment.  *See* Resp. Ex. 9 at 6.  After the 2006 amendment to section 6604, a

11  person found to be an SVP would "be committed for an indeterminate term to the custody of the

12  State Department of State Hospitals for appropriate treatment and confinement in a secure facility

13  designated by the Director of State Hospitals."  Cal. Welf. & Inst. Code § 6604; *see People v.*

14  *McKee*, 47 Cal. 4th 1172 (Cal. 2010).  Although not relevant to the present dispute, the 2006

15  amendments also changed the procedures for discharge from custody of a person who has been

16  committed for an indeterminate term.  *See Taylor v. San Diego County*, 800 F.3d 1164, 1166 (9th

17  Cir. 2015) (describing annual review procedure, and petitions for conditional release and

18  unconditional discharge).

19          For those persons for whom a two-year commitment petition was pending but had not been

20  adjudicated at the time of the 2006 amendments, the amended version of the SVPA was applied and

21  the pending petitions were converted to petitions for indeterminate commitment.  *See Bourquez v.*

22  *Superior Court*, 156 Cal. App. 4th 1275, 1288-89 (Cal. Ct. App. 2007).  That particular point had to

23  be resolved by the courts because the statutory amendments were silent on the point; the unsettled

24  state of the law had a substantial impact on the progress in Mr. Yahn's case in state court.  In 2010,

25  the California Supreme Court announced a new rule that applied to a subset of SVPs whose

26  commitment terms had been changed from two-year commitments to indeterminate commitments.

27  In *People v. Castillo*, 49 Cal. 4th 145 (Cal. 2010), the court held that, where the district attorney

28  stipulated to seek a two-year rather than an indeterminate extension of the commitment term due to

United States District Court
For the Northern District of California

1   uncertainties as to whether the 2006 amendments to the SVPA would apply retroactively, that

2   stipulation was binding on the State.

3   B.      Chronology Of Events In State Court

4          1.      Events Leading Up To 2007 Petition

5          In 1984, Mr. Yahn was convicted of committing lewd acts upon a child under the age of 14.

6   *See* Cal. Penal Code § 288(a).  In 1990, Mr. Yahn was convicted of three counts of committing lewd

7   acts upon a child under the age of 14 and one count of indecent exposure.  *See* Cal Penal Code §§

8   288(a), 314(1).  Resp. Ex. 2 at 1-2; Resp. Ex. 9 at 2.  He was released on parole twice, once in 1999

9   and again in 2000, but was returned to custody for violating parole.  Resp. Ex. 9 at 2.

10         In 2002, the Lake County District Attorney filed a petition seeking to have Mr. Yahn

11  committed as an SVP.  On November 20, 2003, Mr. Yahn was found to be an SVP and was

12  committed to the Department of Mental Health ("DMH") for two years pursuant to the SVPA.  *See*

13  Resp. Ex. 9 at 2.  The two-year period was to run from November 20, 2003 until November 20,

14  2005.  This commitment is not at issue in this case.

15         In October 2005, the Lake County District Attorney filed the first petition to extend the

16  commitment for another two years ("First Extension Petition").  *See id.*  Following a jury trial in

17  January 2007, Mr. Yahn was found to be an SVP and was committed for another two-year period.

18  This two-year period was to run from November 21, 2005 to November 20, 2007.  This commitment

19  is not at issue in this case, but becomes quite important because of the state appellate court's

20  decisions regarding it.

21         2.      The 2007 Petition To Extend Mr. Yahn's Commitment Under SVPA

22         On September 5, 2007, the Lake County District Attorney filed a second petition to extend

23  the commitment for another two years ("Second Extension Petition") in Lake County Superior

24  Court.  Resp. Ex. 2.  This is the commitment petition that is at issue in this case.[1]

25  _____

26         [1] Mr. Yahn argues that the Second Extension Petition was filed on March 5, 2007, rather than
    September 5, 2007, but provides no evidence in support of that assertion.  The record supports
27  Respondent's view that the Second Extension Petition was filed on September 5, 2007.  *See* Resp.
    Ex. 1 (superior court docket sheet); Resp. Ex. 13 at 4 (California Court of Appeal decision
28  identifying the petition as having been filed on September 5, 2007); Resp. Ex. 14 (superior court
    order identifying the petition as having been filed on September 5, 2007).  This Court therefore uses

3

**United States District Court**
For the Northern District of California

On October 26, 2007, a hearing was held on the Second Extension Petition.  The minutes stated that the People "will submit on the probable cause hearing" and the "defense will let the court know if he will submit on the hearing.  The defendant has until 11/20/07 for a probable cause hearing, however, he waives time.  The defendant wants to be transported back to Coalinga State Hospital immediately and waives his personal appearance per PC 977."  Resp. Ex. 3. The court scheduled the probable cause hearing for December 7, 2007, although it did not actually begin until January 18, 2008.  *See* Resp. Ex. 5.

At the first session of the probable cause hearing (on January 18, 2008), the State filed mental health reports and submitted the matter.  Resp. Ex. 4.[2]  At the second session of the probable cause hearing (on January 28, 2008), the court had reviewed the mental health report from the prosecutor, and defense counsel stated he had talked to the defendant and that the defense "want[ed] to continue the matter for 2 more weeks to review further."  Resp. Ex. 5.  At the third session of the probable cause hearing (on February 19, 2008), the court found probable cause to set the matter for trial.  Resp. Ex. 6.  "At the request of defense counsel," the court set the matter for a trial readiness conference on April 7, 2008, and a jury trial on April 29, 2008.  *Id.*

At the pretrial conference on April 7, 2008, the trial date was vacated by stipulation and "[t]ime continues to be waived."  Resp. Ex. 7.  At the request of counsel, a new trial readiness conference was set for August 4, 2008, and a jury trial was set for August 19, 2008.  *Id.*

On August 4, 2008, at the trial readiness conference "[a]t the request of counsel," the trial date was reset for December 2, 2008.  Resp. Ex. 8.

Meanwhile, Mr. Yahn had filed an appeal or a petition for writ of habeas corpus to challenge the First Extension Petition (i.e., the one that resulted in the 2005-2007 commitment term).  The California Court of Appeal issued its opinion on September 12, 2008, and held, among other things, "that the version of the SVPA in effect at the time of trial applied, including the provision for an indeterminate term of commitment."  Resp. Ex. 9 at 2; *see id.* at 8-12.  The California Court of

_____

September 5, 2007 as the date on which the petition to extend the commitment was filed.

[2] Neither party submitted any transcripts of the superior court proceedings.  The information about those proceedings is taken from the minute orders submitted by Respondent.

4

United States District Court
For the Northern District of California

1    Appeal concluded that the superior court had "erred in committing defendant for a two-year term"

2    on the First Extension Petition "because, at the time of trial and judgment [in 2007], section 6604

3    specified that a person found to be an SVP 'shall be committed for an indeterminate term.'" *Id.* at

4    10.  Regardless of whether "the prosecutor consented or agreed not to seek it, the [superior] court

5    only had statutory authority to commit defendant for an indeterminate term." *Id.* at 11.[3]  The

6    California Court of Appeal directed the superior court "to prepare a corrected commitment order" to

7    commit Mr. Yahn to the custody of the DMH "for an indeterminate term." *Id.* at 20.

8         As a result of the California Court of Appeal's September 12, 2008 opinion requiring that the

9    commitment on the First Extension Petition be changed from a two-year commitment to an

10   indeterminate commitment term, a hearing was held on the Second Extension Petition on November

11   10, 2008, at which time the superior court indicated that the trial date would be vacated at the next

12   hearing but took no formal action because defense counsel was not present due to illness.  Resp. Ex.

13   10.  On November 17, 2008, at the pretrial conference for the Second Extension Petition, the

14   superior court stated that pursuant to the appellate court's decision, Mr. Yahn "is now serving an

15   indeterminate commitment.  The prior order is amended to reflect that the term of commitment is an

16   indeterminate term.  Therefore the [Second Extension] Petition is dropped and the trial dates are

17   vacated."  Resp. Ex. 11; *see also* Resp. Ex. 12.

18        On August 12, 2011, the California Court of Appeal reversed course and determined that the

19   First Extension Petition should only have resulted in a two-year commitment period, rather than an

20   indeterminate commitment term.  *See* Resp. Ex. 13.  The state appellate court granted Mr. Yahn's

21   habeas petition in which he had contended that the indeterminate term ordered under the First

22   Extension Petition should be modified to be a two-year term based on "principles enunciated by the

23   California Supreme Court in *People v. Castillo* (2010) 49 Cal. 4th 145."  Resp. Ex. 13 at 1.  The

24   _____

25        [3] According to the California Court of Appeal, when the DMH had notified the superior court
     of a possible error in the commitment term on the First Extension Petition, a hearing was held, at
26   which "the prosecutor explained that he had not amended the petition to seek an indeterminate term
     because the parties had discussed the possible change in the law when trial had been delayed for
27   various reasons.  He stated he had agreed that he would not amend the petition to seek an
     indeterminate term under the amended SVPA.  The [superior] court cautioned that the Court of
28   Appeal might find 'some legal problems with that,' but agreed not to amend the commitment order
     to provide for an indeterminate term."  Resp. Ex. 9 at 5.

United States District Court

For the Northern District of California

California Court of Appeal determined that principles of judicial estoppel required that only a two-year commitment be ordered on the First Extension Petition because the district attorney had sought and agreed to a two-year term at trial, and the California Attorney General had taken a different and inconsistent position in the appellate court by arguing that the district attorney's agreement was unenforceable. *See id.* at 3. The California Court of Appeal therefore ordered the superior court to amend its commitment order on the First Extension Petition "to specify a two-year commitment"; to "reinstate" the Second Extension Petition, "which may be amended to seek an indeterminate term"; and to proceed with consideration of the Second Extension Petition. *Id.* at 4.

The superior court reinstated the Second Extension Petition on October 18, 2011. Resp. Ex. 14.

On December 5, 2011, Mr. Yahn filed a habeas petition in the Lake County Superior Court asserting that his right to due process was violated because his two-year commitment expired without a hearing on further extension of his commitment. The habeas petition was denied on February 1, 2012. Resp. Ex. 23.

A hearing was held on January 23, 2012, at which time the case was set for a trial on June 27, 2012, "[d]ue to [defense counsel] being unavailable until June for trial." Resp. Ex. 15. Mr. Yahn was present; the minutes for the hearing do not indicate that he raised any objection to the June trial date.

On February 21, 2012, Mr. Yahn filed a habeas petition and a request for a stay in the California Court of Appeal. The California Court of Appeal denied the petition and request without comment on February 29, 2012. Resp. Ex. 24.

On March 15, 2012, Mr. Yahn filed a habeas petition in the California Supreme Court and requested a stay of the scheduled June 27, 2012 trial date on the Second Extension Petition. Resp. Ex. 25. The California Supreme Court denied the habeas petition and request for a stay without comment on June 13, 2012. Resp. Ex. 26.

At a hearing in the superior court on June 22, 2012, and on the unopposed motion of the defense, the trial was continued to September 26, 2012. Resp. Ex. 16.

Mr. Yahn filed this action for a federal writ of habeas corpus on July 2, 2012.

**United States District Court**
For the Northern District of California

1    At the trial readiness conference on September 10, 2012, defense counsel stated he "is

2    looking at retaining an expert in this matter," and both counsel agreed to vacate the trial date and

3    continue the matter to September 25, 2012 for the re-setting of a trial date.  Resp. Ex. 17.

4    At a hearing on September 25, 2012, at the request of counsel, the court set the matter for

5    trial on December 12, 2012, and ordered Mr. Yahn to be present for trial.  Resp. Ex. 18.

6    On December 12, 2012, a bench trial was held after Mr. Yahn waived his right to a jury trial.

7    The court granted the Second Extension Petition.  Resp. Ex. 21.  The court "found that [Mr. Yahn],

8    by reason of a diagnosed mental disorder, continues to be a sexually violent predator" and ordered

9    him "recommitted under Welfare and Institutions Code 6604 for an indeterminate term."  Resp. Ex.

10   22.

11   C.    The Federal Habeas Action

12   When Mr. Yahn filed this action, he filed it under 28 U.S.C. § 2241 because he was still a

13   pretrial detainee on the Second Extension Petition.  Docket No. 1.  Later, a trial was held in Lake

14   County Superior Court and Mr. Yahn was civilly committed.  Later still, this Court issued an order

15   recharacterizing the habeas petition to be a "petition governed by 28 U.S.C. § 2254 rather than by §

16   2241."  Docket No. 31.  The Court explained the recharacterization and provided Mr. Yahn an

17   opportunity to choose how he wanted to deal with the important consequences that flow from the

18   recharacterization to a § 2254 petition. *See id.* at 2-7.  Those consequences included the petition

19   would be subject to the rule against second/successive petitions, *see* § 2244(b)(3)(A); the stringent

20   standards of review in 2254(d) and (e); the statute of limitations in § 2244(d); and the exhaustion

21   requirement in § 2254(b), (c).  Docket No. 31 at 6. Mr. Yahn was permitted to decide whether he

22   wanted to proceed with only the three claims asserted in his original petition or to add any new

23   claims. *Id.* at 7-8.  Mr. Yahn filed a response, agreeing with the recharacterization of the petition to

24   be a petition under § 2254, and stating that he wished to proceed with the three claims asserted in his

25   original petition.  Docket No. 32 at 3-4.

26   Mr. Yahn's federal habeas petition presents the following claims: (1) Mr. Yahn was denied

27   his right to due process under the U.S. Constitution by the state's failure to provide a timely re-

28   commitment hearing; (2) Mr. Yahn was denied his federal constitutional right to equal protection

"when he was denied the same rights or treatment as other similarly situated persons," Docket No. 1 at 4; and (3) the "substantive component" of due process was violated because the "SVP Act fails to provide the protection necessary to have a case tried within a meaningful time." *Id.*

### III.   JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action for a writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the petition concerns the civil commitment of a person that took place in Lake County, California, which is within this judicial district. 28 U.S.C. §§ 84, 2241(d).

### IV.   STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

United States District Court

For the Northern District of California

incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.  "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'"  *Id.* at 409.

## V.   DISCUSSION

A.   Due Process Claim For Delay In Holding Trial On Second Extension Petition

Mr. Yahn contends that his right to due process was violated by the delays preceding the trial on the Second Extension Petition.

1.   State Court Decision

The Lake County Superior Court rejected Mr. Yahn's claim on February 1, 2012, giving several reasons for its conclusion.  Resp. Ex. 23.  First, Mr. Yahn had not shown any prejudice caused by the delay, and prejudice would not be presumed.  Resp. Ex. 23 at 3.  Second, he "made no objections to any of the continuances between the filing of the petition in September 2007 and the dropping of the petition hearing in December 2008."  *Id.* at 3.  Third, "[f]rom December 2008, when the hearing was dropped at the direction of the court of appeal, until the court of appeal's recent decision reinstating the petition, petitioner's commitment was indeterminate and no extension hearing was required.  This court had no jurisdiction to hold a hearing.  Under this circumstance, there has been no violation of due process and the hearing may be held in due course."  *Id.* (citing *United States v. Ewell*, 383 US 116, 121 (1966)).  (*Ewell* had rejected a speedy trial claim where much of a 19-month delay between the original arrests and the hearings on later indictments was attributable to the defendants' success in challenging conviction on original indictment; defendants were promptly indicted and convicted after their original arrests and were promptly re-arrested and re-indicted after their motions to vacate the sentence were granted.  *Id.*)  Finally, the superior court noted that, although state due process normally required that SVP commitment trials be held in advance of the commitment term, the rulings of the appellate court had made that impossible by changing the commitment duration after the fact, e.g., by directing the superior court in late 2008 to amend a January 11, 2007 commitment order to specify a two-year term (to run from November 2005 until November 2007) rather than an indeterminate term.  Docket No. 23 at 3.

1    The February 1, 2012 superior court decision is the last reasoned decision from a state court

2    and therefore is the decision to which 28 U.S.C. § 2254(d)(1) is applied.  *See Ylst v. Nunnemaker*,

3    501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

4              2.        Analysis of Due Process Claim

5    The "full panoply of rights" afforded criminal defendants under the Constitution are not

6    applicable to persons facing civil commitment under the SVPA because the SVPA is civil in nature.

7    *See Allen v. Illinois*, 478 U.S. 364, 372 (1986); *see, e.g., id.* at 371-72 (Fifth Amendment guarantee

8    against compulsory self-incrimination inapplicable to commitment proceedings under Illinois'

9    Sexually Dangerous Persons Act because commitment proceedings were regulatory and not criminal

10   in nature, and also finding that, even though some safeguards applicable to criminal proceedings

11   were provided for by statute, the proceedings were not converted into criminal proceedings as a

12   result thereof); *United States v. Perry*, 788 F.2d 100, 118 (3d Cir. 1986) ("The speedy trial clause

13   deals with the timeliness of criminal prosecutions, not civil commitment proceedings"); *see*

14   *generally United States v. Budell*, 187 F.3d 1137, 1141 (9th Cir. 1999) (noting that because a

15   commitment hearing is a civil matter, the constitutional rights to which a defendant in a criminal

16   trial is entitled do not adhere to a respondent in a commitment hearing).

17   Case law relating to speedy trial rights and delays in civil commitment proceedings is sparse.

18   The lower courts have repeatedly turned to the law of speedy trial rights in the criminal context –

19   especially the U.S. Supreme Court's decision in *Barker v. Wingo*, 407 U.S. 514 (1972) (hereinafter

20   "*Barker*") – for guidance as it is the most appropriate analogy.  *See, e.g., Page v. Lockyer*, 200 F.

21   App'x 727 (9th Cir. 2006) (applying *Barker* and other Sixth Amendment speedy trial cases to SVP's

22   trial delay claim); *id.* (6-year delay did not violate speedy trial right); *Williams v. King*, 2015 WL

23   5240200 (N.D. Cal. Sep. 8, 2015) (applying *Barker* analysis due to absence of Supreme Court

24   authority on claimed due process right to speedy trial, and concluding that 15-year delay in holding

25   commitment hearing did not violate petitioner's constitutional rights); *Coleman v. Mayberg*, 2005

26   WL 1876061 (N.D. Cal. Aug. 8, 2005) (applying *Barker* analysis to find that 5-year delay in holding

27   commitment hearing did not violate petitioner's speedy trial rights); *Atwood v. Vilsack*, 338 F. Supp.

28   2d 985, 994 (S.D. Iowa 2004) (applying Sixth Amendment speedy trial right law to analyze denial of

United States District Court

For the Northern District of California

1    speedy justice claim by pretrial detainees awaiting civil commitment hearings pursuant to Iowa's

2    Sexually Violent Predator Act).  No Supreme Court decision prohibits the use of the Sixth

3    Amendment speedy trial analytic approach outside the criminal trial context.  In fact, the Supreme

4    Court has used the speedy trial framework to a claim of an improper delay in civil forfeiture

5    proceedings in *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United*

6    *States Currency*, 461 U.S. 555, 564 (1983) ("The *Barker* balancing inquiry provides an appropriate

7    framework for determining whether the delay here violated the due process right to be heard at a

8    meaningful time").

9          A speedy trial is a fundamental right guaranteed the accused by the Sixth Amendment to the

10   Constitution and imposed by the Due Process Clause of the Fourteenth Amendment on the states.

11   *Klopfer v. North Carolina*, 386 U.S. 213, 222-23 (1967); *see* U.S. Const. amend. VI ("[i]n all

12   criminal prosecutions, the accused shall enjoy the right to a speedy and public trial.")  No per se rule

13   has been devised to determine whether the right to a speedy trial has been violated.  Instead, courts

14   apply a flexible "functional analysis," and weigh the following factors in evaluating a speedy trial

15   claim: (1) length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right;

16   and (4) prejudice to the defendant.  *Barker*, 407 U.S. at 530.  None of the four factors are either a

17   necessary or sufficient condition for finding a speedy trial deprivation; rather, they must be

18   considered together with such other circumstances as may be relevant.  *See id.* at 522, 533.

19         Here, the Lake County Superior Court's rejection of Mr. Yahn's due process claim based on

20   pretrial delay was not contrary to or an unreasonable application of clearly established Federal law,

21   as determined by the U.S. Supreme Court.  With the absence of any Supreme Court holding that

22   there even *is* a right to a trial without undue delay in civil commitment proceedings, relief is barred

23   by 28 U.S.C. § 2254(d)(1).  "If Supreme Court cases 'give no clear answer to the question

24   presented,' the state court's decision cannot be an unreasonable application of clearly established

25   federal law."  *Ponce v. Felker*, 606 F.3d 596, 604 (9th Cir. 2010) (quoting *Wright v. Van Patten*, 552

26   U.S. 120, 126 (2008)).  Even assuming arguendo that there is a due process right to a prompt civil

27   commitment trial, no Supreme Court case prohibited the superior court from utilizing the *Barker*

28   approach to the claim of an improper pretrial delay in the context of a civil commitment proceeding.

United States District Court
For the Northern District of California

The denial of the trial delay claim would not have been an unreasonable application of the *Barker* analytic framework, as explained next.

*Length of Delay*: "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. A post-accusation delay of about a year generally has been considered presumptively prejudicial, such that the court should inquire about the other *Barker* factors. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992); *see also McNeely v. Blanas*, 336 F.3d 822, 826 (9th Cir. 2003) (3-year delay was presumptively prejudicial). More than five years passed between the filing of the Second Extension Petition in September 2007 and the trial thereon in December 2012, making the delay in Mr. Yahn's case presumptively prejudicial. The Court thus moves on to consider the other *Barker* factors.

*Reasons For The Delay*: The court must consider "whether the government or the criminal defendant is more to blame" for the delay. *Doggett*, 505 U.S. at 651. The *Barker* analysis is not, however, one susceptible to resolution with a mathematical approach, such as using a two-column table with each day being placed in the defense column or the prosecution column and the adding up the delays to figure out who caused more of them because *Barker* allows certain circumstances to weigh "more heavily" and "less heavily." *See Barker*, 407 U.S. at 531. For example, in considering the reasons for the delay, a deliberate delay to attempt to hamper the defense "should be weighted heavily against the government," while a "more neutral reason," such as overcrowded courts, should be weighted "less heavily" and a "valid reason" "should serve to justify appropriate delay." *Id.* at 531.

In Mr. Yahn's case, there were several different reasons for the delay. The most significant cause of the delay was a neutral cause. Almost three years of the five-year delay between the filing of the Second Extension Petition and the trial thereon are attributable to the California Court of Appeal's decisions that first made the Second Extension Petition moot and then revived the Second Extension Petition (by changing (on September 12, 2008) the commitment on the First Extension Petition to an indeterminate commitment and later (on August 12, 2011) changing that commitment back to a two-year commitment). During those 35 months, the superior court was without power to

United States District Court

For the Northern District of California

1   adjudicate the Second Extension Petition.  It was not unreasonable for the superior court to

2   determine that those 35 months should not weigh in favor of finding a due process/speedy trial

3   violation on the Second Extension Petition.  *Cf. United States v. Loud Hawk*, 474 U.S. 302, 316

4   (1986) (time devoted to interlocutory and pretrial appeals should not be counted in defendant's favor

5   for speedy trial purposes); *Ewell*, 383 U.S. at 121 (delay stemming from defendants' successful

6   challenge to the first conviction did not support a finding of a speedy trial violation).

7        The second largest part of the delay is attributable to Mr. Yahn and his counsel.  Because

8   defense attorneys act as a defendant's agent, and are not state actors, "delay caused by the

9   defendant's counsel is also charged against the defendant" whether counsel is privately retained or

10  appointed by the state.  *Vermont v. Brillon*, 556 U.S. 81, 90-91 (2009).[4]  The delays attributable to

11  Mr. Yahn include the following:  One month of delay during the probable cause hearing (from

12  January 18, 2008 until February 19, 2008) is attributable to Mr. Yahn because the prosecution had

13  submitted the matter on January 18, 2008, and the court waited at the request of Mr. Yahn until

14  February 19, 2008 before issuing its probable cause ruling.  Ten more weeks of delay (from

15  February 19, 2008 until April 29, 2008) were due to scheduling issues attributable to Mr. Yahn, as

16  the first trial date was set on April 29, 2008 at the request of Mr. Yahn's counsel.  After the Second

17  Extension Petition was reinstated in October 2011, several months of the subsequent delay was

18  attributable to Mr. Yahn.  Nine months of delay (from January 23, 2012 until September 25, 2012)

19  are attributable to Mr. Yahn due to his counsel's unavailability for trial, followed by his counsel's

20  motion to continue the trial date, and followed by his counsel's statement that he was considering

21  retaining an expert for trial.

22       Finally, there were several months of delay in which Mr. Yahn acquiesced.  Five months of

23  the delay (from April 7, 2008 until September 12, 2008) were at the joint request of counsel.

24  Counsel had agreed to an even longer delay, setting the trial for December 2, 2008, but the delay

25  was shortened by the issuance of the California Court of Appeal's decision on September 12, 2008,

26  _____

27      [4] There is an exception to the general rule that counsel's delay is charged against his client:
    delay "resulting from a systemic 'breakdown in the public defender system' could be charged to the

28  State."  *Vermont v. Brillon*, 556 U.S. at 94 (citation omitted).  Mr. Yahn has made no showing that
    this unusual exception applies to his case.

which changed the First Extension Petition commitment to an indeterminate commitment.  And the last ten weeks of delay (from September 25, 2012 until December 12, 2012) were the result of a joint request of the prosecutor and defense counsel.  These delays in which he acquiesced do not weigh in his favor on the speedy trial analysis.  *Cf. United States v. Shetty*, 130 F.3d 1324, 1331 (9th Cir. 1997) (no due process violation where defendant failed to object to continuances).

Thus, of the 63 months that passed between the filing of the Second Extension Petition and the trial thereon, about 35 months were consumed by the neutral event of an appellate court ruling, about 12.5 months count against Mr. Yahn because they are attributable to him and his counsel, and about 7.5 months do not weigh in his favor because they were agreed-upon delays by Mr. Yahn's counsel and the prosecutor.[5]

*Defendant's Demand For A Speedy Trial*:  A petitioner's assertion of his speedy trial right is "entitled to strong evidentiary weight in determining whether the [petitioner] [was] deprived of the right."  *Barker*, 407 U.S. at 531-32.  The "failure to assert the right will make it difficult for a [petitioner] to prove that he was denied a speedy trial."  *Id.* at 532. However, even repeated assertions of a petitioner's speedy trial right must be viewed in light of the petitioner's other conduct. *Loud Hawk*, 474 U.S. at 314-15.

In the early months of the proceedings, Mr. Yahn waived time (e.g., at the hearings on October 26, 2007 and April 7, 2008).  Many, many months passed before Mr. Yahn first complained about the delays in his December 5, 2011 habeas petition in the Lake County Superior Court.  A year later, the trial was held.  During that year, about five months of delay (January - June) was attributable to accommodation of defense counsel's schedule, and about three months of delay (September - December) was pursuant to stipulation of the parties.  And, of course, it cannot be overlooked that, after complaining of delay in December 2011, Mr. Yahn thereafter filed a *pro se*

---

[5] At the time the superior court issued its ruling denying the claim that the pretrial delay violated due process, only 53 months had passed since the filing of the Second Extension Petition. Of those 53 months, 35 months were attributable to the neutral factor of the court of appeal's decision, 3.5 months were attributable to Mr. Yahn, and 5 months of delay were jointly agreed to by the parties.

United States District Court
For the Northern District of California

habeas petition in the state supreme court asking for a stay of the trial date.[6]  A petitioner may not establish that he appropriately asserted his speedy trial right when at the same time he was asserting the right he was filing motions and appeals that contributed to the delay in his trial.  *See Loud Hawk*, 474 U.S. at 314-15.  While Mr. Yahn's state habeas petitions were not frivolous, the request for a stay of the trial date in the petition to the California Supreme Court (along with his counsel's inability to appear for trial for about six more months) undermines the forcefulness of his complaints of an unacceptable delay.

When the superior court issued its ruling on Mr. Yahn's habeas petition in February 2012, Mr. Yahn had just made his very first complaint about the delay in holding the trial, i.e., the habeas petition itself was the first complaint about the delay.  The superior court reasonably could have determined that this factor did not weigh heavily in favor of Mr. Yahn due to its late assertion, as well as the fact that the superior court had just held a hearing on January 23, 2012, at which the defense requested a trial not sooner than June 2012 due to defense counsel's unavailability.  *See* Resp. Ex. 15.

*Prejudice To Defendant*:  Prejudice will not be presumed when the petitioner is at least partially responsible for the delay.  *See Page*, 200 F. App'x at 728.  Actual prejudice can be shown in three ways: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) the possibility that the accused's defense will be impaired.  *Barker*, 407 U.S. at 532.  The last of these kinds of prejudice is the most serious because it "skews the fairness of the entire system."  *Doggett*, 505 U.S. at 654 (quoting *Barker*, 407 U.S. at 532).

The superior court's determination that Mr. Yahn had not shown prejudice was not an unreasonable application of the *Barker* test.  Mr. Yahn states that he was subjected to oppressive pretrial incarceration, but the circumstances he describes are mostly normal consequences of pretrial incarceration (e.g., separation from family and friends, inability to seek employment, and limited ability to help his defense), *see* Docket No. 30 at 15.  *Cf. Page*, 200 F. App'x at 728 ("other than the

---

[6] Mr. Yahn apparently took the position that the trial should be stayed because it was too late to hold a trial.  His habeas petition filed in the California Supreme Court was prominently marked "Stay requested – trial calendared for June 27, 2012" on the first page.  *See* Resp. Ex. 25 at 1.  Had such a stay been granted as interim relief, it inevitably would have further delayed the trial.

**United States District Court**
For the Northern District of California

1   length of the pretrial detention, there has been no showing that the detention was significantly

2   oppressive").  Mr. Yahn also states that he had to endure being housed at a hospital, *id.*, but fails to

3   note that he chose to be housed at the hospital rather than at the county jail and does not show that

4   the conditions at the hospital were more restrictive than at the county jail.  Further, at the hospital he

5   had the ability to receive treatment and perhaps improve to the point where he would be able to

6   defeat the efforts to extend his civil commitment because that decision would be based on conditions

7   as they exist at the time of trial, rather than at some distant point in the past.  Finally, on the most

8   important part of the prejudice factor -- impairment of presentation of the defense -- Mr. Yahn made

9   absolutely no showing of any impairment.

10         The superior court's rejection of Mr. Yahn's due process claim was not contrary to or an

11   unreasonable application of the *Barker* test or any other Supreme Court holding.  He is not entitled

12   to the writ on this claim.

13   B.    Equal Protection Claim

14         Mr. Yahn contends that he was denied equal protection of the law because SVPs are treated

15   differently from other similarly situated persons with regard to when their trials must be held.  He

16   states that those persons recommitted under the not-guilty-by-reason-of-insanity ("NGI") statute and

17   those recommitted under the mentally disordered offender ("MDO") statute "have a delineated time

18   in which they must be brought to trial.  [The] SVP Act has no such provisions and prosecutors,

19   Courts, and defense attorneys use that excuse to delay trials."  Docket No. 1 at 4.  According to Mr.

20   Yahn, the California Penal Code requires that the trials on petitions to extend the commitment under

21   the NGI or MDO statutes must start thirty days prior to the expiration of the current commitment

22   term, whereas the SVPA has no similar provision.  Docket No. 1 at 23-24, citing Cal. Penal Code §

23   1026.5(b)(4)), § 2972(a)).

24         The SVPA does not specify the date by which the trial must start on a petition to extend the

25   commitment of an SVP, although the SVPA does require that the petition to extend the commitment

26   be filed before the expiration of any term then being served.  *See* Cal. Welf. & Inst. Code § 6601.

27   By contrast, the trial for a petition to extend the commitment of a person who has been committed as

28   NGI "shall commence no later than 30 calendar days prior to the time the person would otherwise

United States District Court

For the Northern District of California

1   have been released, unless that time is waived by the person or unless good cause is shown."  Cal.

2   Penal Code § 1026.5(b)(4).  The MDO statutory scheme also provides that the trial for a petition

3   "for continued treatment" of a person designated as an MDO "shall commence no later than 30

4   calendar days prior to the time the person would otherwise have been released, unless the time is

5   waived by the person or unless good cause is shown."  Cal. Penal Code § 2972(a).

6          The Lake County Superior Court rejected Mr. Yahn's equal protection claim on the merits.

7   *See* Resp. Ex. 23.  The court apparently rejected the claim on the basis that different treatment

8   satisfied the rational basis test.  The superior court noted that the three classes – i.e., persons

9   committed under the  SVP, NGI and MDO statutes – were similarly situated in some respects but not

10  in all respects and there was a legitimate basis for the different treatment of persons facing SVP

11  extended commitment.

>           An express purpose of the SVPA is to protect society from sexually
>           violent predators.  This is a legitimate purpose.  "The problem targeted
>           by the [SVPA] is acute, and the state interests--protection of the public
>           and mental health treatment--are compelling."  (*Hubbart [v. Superior
>           Court* (1999) 19 Cal. 4th 1138], 1153, fn. 20.)  In our view, society
>           can reasonably determine that sexually violent predators present an
>           acute danger that situates them differently than nonsex offenders and
>           justifies disparate treatment in the timing of commitment hearings.

17  Resp. Ex. 23 at 4 (first alteration in original).

18         The Equal Protection Clause of the Fourteenth Amendment provides that a state shall not

19  "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend.

20  XIV, § 1.  "[L]egislative classifications as a general rule are presumptively valid under the Equal

21  Protection Clause," and ordinarily are upheld if they are "'rationally related to a legitimate state

22  interest.'" *Coal. for Econ. Equity v. Wilson*, 122 F.3d 692, 702 (9th Cir. 1997) (quoting *City of*

23  *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)).

24         Earlier this year, the Ninth Circuit rejected the same equal protection challenge to the SVPA

25  that Mr. Yahn raises.  In *Seeboth v. Allenby*, 789 F.3d 1099 (9th Cir. 2015), the petitioner argued

26  that the absence of a statutory provision setting forth a time within which to hold a trial – called a

27  "timing provision" by the Ninth Circuit, *id.* at 1102 n.2 – to extend an SVPA commitment denied the

28  SVP equal protection because California law gave NGI and MDO persons a statutory right to a trial

1    on the extended commitment petition within a specified period.  Like Mr. Yahn's case, *Seeboth* was

2    governed by the AEDPA.  *See Seeboth*, 789 F.3d at 1103-04.

3        *Seeboth* explained that, although heightened judicial scrutiny may be required if a legislative

4    classification targets a suspect class or burdens the exercise of a fundamental right,  the U.S.

5    Supreme "Court has never specified clearly what standard of review applies" to civil commitment

6    statutes.  *Id.* at 1105.  "Accordingly, state courts reasonably may apply the rational basis test when

7    considering equal protection challenges to civil commitment laws."  *Id.*  "[B]ecause the courts

8    reasonably could have used the rational basis standard, we cannot grant habeas relief unless

9    Petitioner shows that it was objectively unreasonable to conclude, *Williams*, 529 U.S. at 409, that

10   there was a rational relationship between the differential treatment and a legitimate governmental

11   purpose."  *Seeboth*, 789 F.3d at 1105-06.  "With respect to the procedural steps in the civil

12   recommitment process that are at issue here, the state court reasonably concluded that California

13   may make such a distinction" because the SVPs posed a much greater risk of danger.  *Id.* at 1106.

14   The Ninth Circuit rejected the argument that *Baxstrom v. Herold*, 383 U.S. 107 (1966), provided

15   clearly established law that a state may not deny a right to one group of persons civilly committed

16   that was conferred on another group of persons civilly committed.  *Baxstrom* had invalidated as a

17   denial of equal protection a statute that permitted involuntary commitment at the expiration of a

18   prison sentence without a finding of dangerousness or jury review as required for all other civil

19   commitments in that state.  *See id.* at 110-11.  "*Baxstrom* did not address whether state laws could

20   differentiate between sexually violent offenders and other violent offenders, nor did the Court

21   consider less drastic procedural distinctions between groups.  Here, all the allegedly similar groups

22   receive trials before being civilly committed.  The state court did not apply *Baxstrom* unreasonably."

23   *Seeboth*, 789 F.3d at 1107.  *See also Taylor v. San Diego County*, 800 F.3d 1164, 1170 (9th Cir.

24   2015) ("reliance on *Baxstrom* is misplaced" for petitioner asserting equal protection challenge based

25   on differences between SVPA and civil commitment under Lanterman-Petris-Short Act).[7]  *Seeboth*

---

27       [7] *Taylor* also found the Supreme Court's decision in *Jackson v. Indiana*, 406 U.S. 715

28   (1972), "unavailing" as support for an equal protection claim based on the difference between
     California's civil commitment statutes.  In *Jackson*, a mentally disabled person had a pending
     robbery case when the trial court civilly committed him until he was certified as "sane," even though

held that "[i]t was not objectively unreasonable for the state courts to hold that the lack of a timing provision in the SVPA does not deprive SVPs of equal protection of the laws. We cannot say that the California courts contravened clearly established federal law. 28 U.S.C. § 2254(d)(1)." *Seeboth*, 789 F.3d at 1107.

Seeboth is binding on this Court on the equal protection claim because *Seeboth* examined only Supreme Court precedent to determine what law was "clearly established" for AEDPA purposes and whether the state court's holding was an unreasonable application of Supreme Court precedent.

*See generally Marshall v. Rodgers*, 133 S. Ct. 1446, 1450-51 (2013). The *Seeboth* decision clearly is written in the AEDPA framework: "because we are reviewing the state courts' decision under AEDPA, the question is not what test we would use were we reviewing de novo, but what 'clearly established' United States Supreme Court precedent the state courts were bound to apply." *Id.* at 1105.

The Lake County Superior Court's denial of Mr. Yahn's equal protection claim was not an "unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), for the reasons stated in *Seeboth*. The Lake County Superior Court's use of the rational basis test did not offend any holding of the U.S. Supreme Court. *See Seeboth*, 789 F.3d at 1104-05. Further, as in *Seeboth*, with respect to the procedural steps in the commitment extension process that are at issue, the state court reasonably concluded that California may make such a distinction between SVP and NGI/MDO persons by "decid[ing] that sexually violent crime is qualitatively more dangerous than other kinds of violent crime." *Id.* at 1106.

---

it was unlikely that the petitioner would ever be deemed competent to stand trial. *Id.* at 719. "Under these circumstances, the Supreme Court determined that 'subjecting Jackson to a more lenient commitment standard and to a more stringent standard of release than those generally applicable to all others not charged with offenses, and by thus condemning him in effect to permanent institutionalization without the showing required for commitment or the opportunity for release' under other statutory provisions violated the Equal Protection Clause." *Taylor*, 800 F.3d at 1170 (quoting *Jackson*, 406 U.S. at 730). California's SVPA, by contrast, "does not create a capricious custody scheme in violation of equal protection tenets" because of its numerous procedural protections for the determination that one is an SVP and the opportunity of the SVP to petition for his release once committed. *Id.*

United States District Court

For the Northern District of California

1   Finally, unlike the situation in *Baxstrom*, the groups being compared  – SVPs, NGIs, and MDOs –

2   all receive trials before being civilly committed.  *Seeboth*, 789 F.3d at 1107.

3          The Court notes that the absence of a timing provision in the SVPA is softened by some

4   other differences between the SVPA and the NGI/MDO statutes.  Persons facing extended

5   commitments under the NGI and MDO statutes do not have the benefit of a judicial probable cause

6   determination in advance of trial on the extended commitment petitions, whereas the SVPA requires

7   such a determination.  *See* Cal. Welf. & Inst. Code § 6602.  Also, the SVPA extended-commitment

8   petitions existed at a time when the SVPA commitments were for two-year periods, so an SVP

9   facing an extended commitment would have had a judicial determination that he was an SVP in the

10  not-too-distant past, whereas a person for whom recommitment was sought under the MDO or NGI

11  statute could have been in custody for decades or more since the last judicial determination.  The

12  petition to re-commit or extend the commitment under both the NGI statute (Cal. Penal Code §

13  1026.5(b)(4)) and the MDO statutes (*id.* at § 2970(a) and § 2972(a)) would have followed the

14  person's commitment at the time of trial on the criminal offense, which may have been years or

15  decades earlier, depending on his offense.  *See generally Hudec v. Superior Court*, 60 Cal. 4th 815,

16  818 (Cal. 2015) ("A person found not guilty of a felony by reason of insanity may be committed to a

17  state hospital for a period no longer than the maximum prison sentence for his or her offense or

18  offenses").  Lastly, although both the NGI and the MDO statutes require trial to commence no later

19  than 30 days before the person would otherwise have been released, both statutes have two rather

20  substantial exceptions: the time for commencement of the trial can be waived and can be delayed

21  upon a showing of good cause.  *See* Cal. Penal Code § 1026.5(b)(4).

22         Mr. Yahn is not entitled to the writ on his equal protection claim because the Lake County

23  Superior Court's rejection of his claim was not contrary to or an unreasonable application of "clearly

24  established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C.

25  2254(d)(1).

26  C.     "Substantive" Due Process Claim

27         Under the SVPA, once a judge determines that "there is probable cause to believe that the

28  individual named in the petition is likely to engage in sexually violent predatory criminal behavior

1   upon his or her release," the judge "shall order that the person remain in custody in a secure facility

2   until a trial is completed and shall order that a trial be conducted to determine whether the person is,

3   by reason of a diagnosed mental disorder, a danger to the health and safety of others in that the

4   person is likely to engage in acts of sexual violence upon" his release.  Cal. Welf. & Inst. Code §

5   6602.  The SVPA does not provide a deadline within which that trial must occur.[8]

6          Mr. Yahn contends that the absence of a specified time frame in the SVPA within which the

7   trial must be held on a petition to extend a commitment after probable cause is found to exist

8   violates his "substantive" due process rights.[9]  Docket No. 1 at 15.  Mr. Yahn argues that, when the

9   state wants to deprive a person of his liberty, "part of a constitutionally adequate due process

10  procedure" must be a clearly delineated time frame in which the trial must start to determine

11  whether the deprivation may occur after probable cause is found.  *Id.*  This claim challenges the

12  SVPA itself, and is separate from his claim (discussed above) that the delays in holding the trial in

13  his particular case violated due process.

14

15

---

16          [8] Under the SVPA, a petition to extend commitment must be filed before the current incarceration or commitment has ended.  *See* Cal. Welf. & Inst. Code § 6601(a).  A superior court

17  judge does a *prima facie* review of the petition to see whether it "states or contains sufficient facts that, if true, would constitute probable cause to believe that the individual named in the petition is

18  likely to engage in sexually violent predatory criminal behavior upon his or her release."  *Id.* at § 6601.5.  If the judge makes this determination, the person is ordered detained in a hearing until the

19  probable cause hearing mentioned in § 6602, which must commence within ten days, can be completed.  *Id.* at § 6601.5.  At the probable cause hearing under § 6602 – mentioned in the main

20  text – the person is entitled to the assistance of counsel.

21          [9] This Court has put the word "substantive" in quotation marks because, although he used that term, the gist of Mr. Yahn's argument is a procedural due process rather than a substantive due

22  process claim.  The argument he makes is a mismatch with "substantive due process," which is a legal term of art.  Substantive due process refers to certain actions that the government may not

23  engage in, no matter how many procedural safeguards it employs.  *See County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998).  Due process protection in the substantive sense limits what the

24  government may do in both its legislative and executive capacities.  *See id.* at 846.  Only official action that "'can properly be characterized as arbitrary, or conscience shocking,' in a constitutional

25  sense" amounts to a substantive due process violation.  *Id.* at 847 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 128 (1992).  If Mr. Yahn actually meant to argue that the omission of a

26  deadline for a trial was so conscience-shocking that it violated his substantive due process rights, that claim could be dispatched with great ease under 28 U.S.C. § 2254(d)(1) because no Supreme

27  Court case has held that a deadline, an absent deadline or a missed deadline shocks the conscience in the constitutional sense.  Notwithstanding Mr. Yahn's use of the term "substantive," this Court

28  devotes the main analysis to the merits of the claim as a procedural due process claim because that is the gist of Mr. Yahn's argument.

United States District Court
For the Northern District of California

1    The state courts rejected this claim without discussion.  Because this claim was rejected most

2  recently by the California Supreme Court without explanation, this Court "must determine what

3  arguments or theories supported or . . . could have supported, the state court's decision; and then it

4  must ask whether it is possible fairminded jurists could disagree that those arguments or theories are

5  inconsistent with the holding in a prior decision of [the U.S. Supreme] Court." *Harrington v.*

6  *Richter*, 562 U.S. 86, 102 (2011).

7    Some of the due process principles upon which Mr. Yahn relies are familiar and are clearly

8  established law from the Supreme Court.  "[T]he Due Process Clause provides that certain

9  substantive rights – life, liberty, and property – cannot be deprived except pursuant to

10  constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541

11  (1985) (termination of a government worker).  If there is a constitutionally protected interest, "'the

12  question remains what process is due,'" and the answer to that question is found in federal

13  constitutional principles rather than state law.  *See id.* at 541-42.  "An essential principle of due

14  process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for

15  hearing appropriate to the nature of the case.'" *Id.* at 542 (quoting *Mullane v. Central Hanover Bank*

16  *& Trust. Co.,* 339 U.S. 306, 313 (1950)).  The opportunity to be heard must be "'at a meaningful

17  time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting

18  *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965) (citation omitted).

19    It also is clearly established that commitment to a mental hospital produces a "'massive

20  curtailment of liberty'" and consequently requires procedural protections under the Due Process

21  Clause.  *See Vitek v. Jones*, 445 U.S. 480, 491-92 (1980).  The Supreme Court has "consistently

22  upheld such involuntary commitment statutes provided the confinement takes place pursuant to

23  proper procedures and evidentiary standards." *Kansas v. Hendricks*, 521 U.S. 346, 357 (1997)

24  (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992), and *Addington v. Texas*, 441 U.S. 418, 426-427

25  (1979)).

26    The Supreme Court did approve a plan under which basic procedural protections had to be

27  afforded to a prisoner *before* he could be transferred to a mental hospital in *Vitek*, 445 U.S. at 494,

28  including written notice and a hearing. Other than to approve the procedural protections that were to

United States District Court
For the Northern District of California

1    be provided "before" the prisoner was transferred to the mental hospital, the Supreme Court did not

2    discuss the timing issue at all in *Vitek*. *See id.* at 494. *Vitek* also did not address any pretrial

3    detention concerns that might arise before the pre-transfer hearing was held because the case

4    involved a prisoner who was already lawfully in custody.

5           Other cases also have recognized that the Due Process Clause protects against involuntary

6    civil commitment; like *Vitek*, those cases do not discuss the timing issue. *See, e.g., Humphrey v.*

7    *Cady*, 405 U.S. 504, 512-13 (1972) (remanding for consideration of, among other things, claims that

8    jury trial, effective assistance of counsel, and the opportunity to present and confront witnesses were

9    denied at commitment of person for compulsory treatment under Wisconsin's Sex Crimes Act but

10   provided for people committed under Wisconsin's Mental Health Act); *Hendricks*, 521 U.S. 346

11   (considering substantive criteria for commitment); *Kansas v. Crane*, 534 U.S. 407 (2002)

12   (elaborating on *Hendricks*' substantive criteria); *Addington*, 441 U.S. at 438 (1979) ("clear and

13   convincing evidence" standard satisfied due process). But none of the foregoing cases answer the

14   question whether "proper procedures," *Hendricks*, 521 U.S. at 357, require that a civil commitment

15   scheme provide a specific deadline by which to hold a trial after probable cause is found.

16          *Vitek* clearly establishes that certain procedural protections must be afforded *before* a person

17   can be civilly committed to a hospital, but that protection *does* exist under the SVPA. The person

18   subjected to the SVPA is not civilly committed to the hospital until the trial is held and the necessary

19   findings are made upon proof beyond a reasonable doubt. *See* Cal. Welf. & Inst. Code § 6604.

20   Until the trial is held, the person has not been committed and remains a pretrial detainee. He must

21   be kept in a "secure facility," Cal. Welf. & Inst. Code § 6602, but that "secure facility" need not be a

22   hospital if his prior commitment term has ended. None of the Supreme Court cases Mr. Yahn cites

23   discuss the time gap between a probable cause determination and the trial, let alone resolve whether

24   a statutory civil commitment scheme must delineate the outer limits of that time gap. "If Supreme

25   Court cases 'give no clear answer to the question presented,' the state court's decision cannot be an

26   unreasonable application of clearly established federal law." *Ponce v. Felker*, 606 F.3d 596, 604

27   (9th Cir. 2010) (quoting *Wright v. Van Patten*, 552 U.S. 120, 126 (2008)).

28

United States District Court
For the Northern District of California

1    Not only is there no clear answer to the question whether a civil commitment trial must be

2    held in a particular time frame – other than it must be before the person is committed or his/her

3    commitment extended – the Supreme Court precedent that does exist suggests the Supreme Court

4    might resolve the issue adversely to Mr. Yahn.  For example, the Supreme Court rejected a proposal

5    to constitutionally require a criminal defendant to be offered a trial within a specified time period to

6    satisfy the Sixth Amendment speedy trial right in *Barker*, 407 U.S. at 523: "We find no

7    constitutional basis for holding that the speedy trial right can be quantified into a specified number

8    of days or months. The States, of course, are free to prescribe a reasonable period consistent with

9    constitutional standards, but our approach must be less precise." *Id.*  The Supreme Court also has

10   evaluated due process claims for preindictment delay on a case-by-case basis rather than by setting

11   out a calendar deadline within which an indictment must be brought to comport with due process.

12   *See United States v. Marion*, 404 U.S. 307, 324-25 (1971) ("To accommodate the sound

13   administration of justice to the rights of the defendant to a fair trial will necessarily involve a

14   delicate judgment based on the circumstances of each case. It would be unwise at this juncture to

15   attempt to forecast our decision in such cases.")  Statutes (such as the Speedy Trial Act and statutes

16   of limitations) may require one to resort to a calendar to address concerns about trial delays and

17   preindictment delays, but the Supreme Court has not used calendar deadlines to resolve the related

18   constitutional issues.

19   In the context of a parole revocation, the Supreme Court has been somewhat firmer on time

20   limits.  The Supreme Court approved a two-step process for parole revocation: first, "some minimal

21   inquiry [should] be conducted at or reasonably near the place of the alleged parole violation or arrest

22   and as promptly as convenient after arrest while information is fresh and sources are available," and

23   then, later, there must "be an opportunity for a hearing" before the final decision on revocation is

24   made. *Morrissey v. Brewer*, 408 U.S. 471, 485, 487-88 (1972).  In the parole revocation context,

25   "[t]he revocation hearing must be tendered within a reasonable time after the parolee is taken into

26   custody.  A lapse of two months . . . would not appear to be unreasonable." *Id.* at 488.  Respondent

27   argues that, even using the *Morrissey* approach, the state court's decision survives under § 2254(d)

28   review because *Morrisey* required that the full hearing be "tendered with a reasonable time," and the

24

United States District Court
For the Northern District of California

1  full hearing on the Second Extension Petition was "tendered" within a few months, even though it

2  was repeatedly continued due to requests of Mr. Yahn's counsel and later was vacated by the

3  California Court of Appeal's ruling, as discussed in Section A, above.  That would not be an

4  unreasonable application of *Morrissey* because *Morrissey* did not preclude the parties from

5  extending the deadline for holding the parole revocation hearing when, for example, to

6  accommodate the need to gather additional evidence.  The SVPA contemplates a much more formal

7  and elaborate proceeding than a parole revocation proceeding, and therefore it almost certainly will

8  take a longer time for the full hearing to be "tendered" or held.  Unlike the person facing parole

9  revocation, the person facing SVPA commitment is "entitled to a trial by jury, to the assistance of

10  counsel, to the right to retain experts or professional persons to perform an examination on his or her

11  behalf, and to have access to all relevant medical and psychological records and reports."  Cal. Welf.

12  & Inst. Code § 6603(a).  Evaluations of the person also must be obtained by the State before trial.

13  *See id.* at § 6603(c).  Hence, Mr. Yahn seeks a significant expansion of *Morrissey* in order to make

14  his claim here.  The Supreme Court has made clear that a state court's failure to extend a Supreme

15  Court rule to a new context does not support relief under § 2254(d)(1).  "Section 2254(d)(1)

16  provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent;

17  it does not require state courts to *extend* that precedent or license federal courts to treat the failure

18  to do so as error."  *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (in capital case, not objectively

19  unreasonable for state court not to extend to penalty phase constitutional rule that applies to guilt

20  phase).

21      Mr. Yahn cannot obtain federal habeas relief on his claim because there is no "clearly

22  established Federal law, as determined by the Supreme Court of the United States" establishing the

23  right to have a specific time frame for a trial after a probable cause determination set out in a civil

24  commitment statute.  *See* 28 U.S.C. § 2254(d)(1).  Without the existence of clearly established

25  federal law, any state court's adjudication of the claim cannot be said to be contrary to or an

26  unreasonable application of such law.  *See Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see, e.g., id.*

27  at 76-77 (given the lack of holdings from the Supreme Court and the wide divergence of the lower

28  courts on the issue of the potentially prejudicial effect of spectators' courtroom conduct, the state

United States District Court

For the Northern District of California

1    court's determination that the petitioner was not inherently prejudiced by spectators wearing buttons

2    depicting the murder victim was not contrary to or an unreasonable application of clearly established

3    Supreme Court law); *Varghese v. Uribe*, 736 F.3d 817, 821 (9th Cir. 2013) (because there is no

4    Supreme Court authority that squarely addresses petitioner's claim – that a criminal defendant's

5    rights to counsel and due process are violated when the state court conditions his access to, and

6    testing of, the prosecution's limited evidence on the disclosure of the test results to the prosecution –

7    the state appellate court had no specific rule to apply, so its decision was not an unreasonable

8    application of clearly established Supreme Court precedent); *Foote v. Del Papa*, 492 F.3d 1026,

9    1030 (9th Cir. 2007) (Nevada Supreme Court's rejection of petitioner's conflict of interest claim was

10   neither contrary to nor an unreasonable application of clearly established federal law; although

11   Supreme Court had held an irreconcilable conflict between a defendant and his trial counsel may

12   entitle him to new counsel, no Supreme Court case had held that an irreconcilable conflict between

13   the defendant and his appointed appellate counsel violates the Sixth Amendment).

14           When the California Supreme Court considered Mr. Yahn's claim that due process required

15   the civil commitment statute to require a trial within a specific time frame, there was no "clearly

16   established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. §

17   2254(d)(1), to apply to his claim.  Without the existence of clearly established Federal law, the

18   California Supreme Court's rejection of the claim cannot be said to be contrary to or an

19   unreasonable application of such law.  *See Carey v. Musladin*, 549 U.S. at 76-77.  Section

20   2254(d)(1) therefore requires the denial of Mr. Yahn's claim.

21   D.      A Certificate Of Appealability Will Not Issue

22           Mr. Yahn has not "made a substantial showing of the denial of a constitutional right," 28

23   U.S.C. § 2253(c)(2), and this is not a case in which "reasonable jurists would find the district court's

24   assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484

25   (2000).  Accordingly, a certificate of appealability is **DENIED**.

26   ///

27   ///

28   ///

# VI.   <u>CONCLUSION</u>

The petition for writ of habeas corpus is **DENIED** on the merits.  The Clerk shall close the file.

IT IS SO ORDERED.

Dated: January 6, 2016

_____
EDWARD M. CHEN
United States District Judge

United States District Court

For the Northern District of California